Good morning. Good morning. May it please the court. Heidi Perry Stern on behalf of Tyler Randall. This court can decide this case based on the second requirement of qualified immunity and that is that there was no clearly established right that Gorsline is alleging in this case that was violated by Mr. Randall. The only case that the district court relied on and the only case that Gorsline has relied on here is the LW v. Grubbs case and that case does not provide a clearly established right in these circumstances and that's because this court does not find a clearly established right at that high of a level of generality. Let me kind of focus you in terms of, I mean, obviously something really horrible happened here and I know that it seems like it was preventable, but we're not here on a negligence claim. So there's not a negligence, I mean, could the individual that was injured have brought a negligence claim? In state courts? Probably so, yes. I think that this is within the context of a 1983. Correct. So I struggle with, we obviously have to give all inferences in favor of Aja Gorsline here, but my and left a woman alone and a guy came in that was a prisoner and really hurt her and attacked her. So on the deliberate indifference prong here, what evidence is there of deliberate indifference? Okay, so going to the this court that it's a subjective test. So it's if a person in Randall's position, he would have had to have been aware of the danger and taken a risk with indifference to Gorsline's safety. In this case, there's really no dispute that he was not aware of the danger. At the very most, he was aware of a generalized danger that they were in a prison, but... Yeah, there's bad people in prisons. Yes. They generally... Correct. However, in this case, I think it's important to note that the inmate at issue, Kukendale, he was in a medium security facility, and he had a background that perhaps would have led him to be placed in a maximum security facility, and he had in fact been at such a facility previously. But there is no allegation that Randall knew of that. I'll even point out that there's no allegation in the complaint that Randall took any act to allow Kukendale to come into the activity room. Everything in the complaint, if you look at it, is written in a passive voice. There's no allegation that Randall left the Sally Port doors open. There's no allegation that he knew that Kukendale was wandering around or that another inmate was. Don't we have to, as Judge Callahan just pointed out, construe the allegations in light most favorable to Ms. Gorslein? Yes. And so, we don't really know what Mr. Randall knows or doesn't know about who the inmate population was in that housing unit. I guess my question is, don't these questions about deliberate indifference usually turn on tribal questions of fact that would go on to a Yes. But she has not pled them here. I mean, she has pled that there, this was a unit of 167 inmates. This particular inmate happened to be there and gained access. She has said that the only way that he could gain access is by someone not manning this Sally Port door, that he abandoned that post, and that she was harmed as a result. I don't think she says that last part, that there was no way for him to access other than... Well, there was no other officer. I mean, she does allege that he was the only officer working at that post. At that unit, yes. Okay. So, why isn't it a reasonable inference that if he's the only officer manning that post and after leaving, the inmate was able to pass, that it was that action that caused the entry? Why isn't that a reasonable inference, at least for purposes of getting to a trial? Because it doesn't meet the standards of deliberate indifference and because it doesn't fit with this court's prior case law as to what clearly established law is. The standard is just too high. So, for example, this court has never found that a qualified immunity... Sorry, let me back up a little bit. I'm sorry. This court has never found a clearly established right where there's no use of state power. Okay. So, this case, unlike Grubbs, for example, does not involve a use of power. Why not? Grubbs was a supervisor. So, I will say this. I think Grubbs has some guidance, but I think Wood versus Ostrander, the case about the police officer stranding a woman after the driver was arrested for a DUI in a high crime neighborhood, and then I think she was subsequently attacked. I think that has as much bearing, if not more, on the clearly established law side of this. Why? And that was a case where the use of official power was a cause in this attack, or at least as it was alleged. Here you have Mr. Randall being a corrections officer, showing up at work. This is his job. And if he abandoned his post, and that resulted in the attack, why isn't that a use, an exercise of state power in your mind? It's just not enough of a misstep. I think that he doesn't have control to tell Gorslein what to do in the way a police officer has, or a supervisor in the case of Grubbs, has the ability to tell or put a person in a certain situation. So he's not affirmatively putting Gorslein in a situation. If there are people in custody who could present a danger for a variety of reasons, why wouldn't Mr. Randall have known that? And why wasn't then his affirmative decision to leave putting someone at risk? Because it's too generalized. It's not a particular harm. Why is it any more generalized than the officer? This is why I keep going back to Wood. Wood left the woman. I mean, he didn't have any particular power over the female passenger that was left stranded in this high crime neighborhood. He stranded her. So that was his power. Right. So the act of him stranding her seems analogous to me to the act of stranding Ms. Gorslein by abandoning his post. They both seem like versions of stranding someone in a high crime area, whether it's in prison or somewhere else. I would say that if Mr. Randall were in charge of placing Ms. Gorslein in a position where she was exposed to dangerous inmates that he knew were dangerous, that would be a very different case from what we have here. Would it be a different case if, hypothetically, let's say if Ms. Gorslein was a man and someone came in and beat him up? Would that be a different case then? It seems that there's a sort of a gender component to this that I'm not sure really should matter. If he's responsible to make sure no one gets hurt there, then does it matter whether it's a woman or a man here? I think in order to answer that question, the court would have to go back to the standards that it applies to deliberate indifference and to the requirements for a state-created danger. I can't answer that definitively for all men, all women, but I know that this court does look at is there a foreseeable harm? Is there a particularized danger rather than a generalized danger? Now, I'll try and hypothetically answer your question. There could be a case where a woman is more at risk, and so that's a more particularized danger. And this is not that case. There is no allegation that these inmates were — sorry, that Randall knew these inmates were particularly prone to violence at all. It was not a maximum security situation. Is this an issue of leave to amend here? Because this is obviously at an early stage of the proceedings, so we — should there — should it go further before? I don't think — Your Honor, I don't think amending — I think amending is futile here, essentially. I don't think that — Is there a request to amend? I know some people were dismissed down below, and they were given leave to amend. Everyone was dismissed below, yes. And Randall was the one person left standing, he was the one sort of on the ground, and because the court decided that Grubbs was enough of a clearly established law for him to follow. But, no, I don't think that — let's put it this way. If Gorsline had a reason to believe that Randall knew of a danger, she could have easily put that in the complaint. Rather, the complaint actually lists a separate unknown defendant as the one who had that level of knowledge of harm. She could have put Randall in that position. And I can — if the Court would like, I can find that citation. But in the Second Amendment complaint, there's actually an allegation against a DOE defendant with that knowledge. So I don't think that this is a case where remand is going to help the plaintiff. If the inmate had — and I don't mean to say justice about Randall whatsoever, but if the inmate had bribed a corrections officer about gaining passage through the Sally Port door, and that resulted in an attack on Ms. Gorsline, would you say that that was a different situation, that there was something more particularized there, or state action? I think that would be an incredibly different situation, because there would have then been an affirmative act to leave the Sally Port doors open. So why — We don't have that allegation. There was no allegation that they were left open. There's not even an allegation that Randall facilitated the entry of Kukendale, the inmate. Well, can we reasonably infer that Randall knew Unit 2B didn't have a floor officer staffed on the day of the assault? I think that that is alleged in the complaint. Okay. A floor officer, yes, because Randall was the control officer. So that is correct. They do allege that. So does it matter that he went to the bathroom as opposed to that he went somewhere else? Does that matter? That's a good question, Your Honor. I think it would matter in a negligence case. I don't think it matters when you're looking as to whether this is a constitutional claim or not. I think you can — the might matter is that it was a short amount of time. That kind of thing might matter. The kind of — what might matter is that he does hear her screaming and comes right back and gets help for her. I think Gorsling alleges — So he's nearby. I think she alleges that Kukendale doll walked through the Sally Port doors three times between 9 and 9.30. Was this really a bathroom break? It seems like it had lasted 30 minutes. I believe the complaint says it was 15 minutes at some point in a different paragraph, but that's what they believe it was. So I don't know whether that's — it says in the complaint it was a bathroom break. So I'm going by what's alleged there. Now, what's your position whether there was an affirmative act or not? Sure. So I would say that there is an affirmative act in the sense that he did leave to go to the bathroom. So that is an affirmative act. However, it's not the kind of affirmative conduct that leads to a State-created danger. Those types of situations this Court has always found them to be an act that puts someone in a more dangerous position. It's an act that is knowing and deliberately indifferent. So even if there's an act that's just — it's just an act, it's not enough to reach a constitutional violation. Could it be a negligence situation? Yes. If the — if the complaint alleged that the only way that an inmate could get through those doors is if it was either allowed or — by Randall or he left his post and that was the only way that someone could go through, would you say that that's — that makes a difference then? If there was a direct — Like that he — that he's the only gatekeeper to an inmate passing through into — into this protected area. I'm not sure. I think it would be enough if the complaint had stated he left the doors open, something like that, he left the doors open. That might be enough. But it's — But that's only partially enough, Your Honor. Okay. Why is that? That's enough to establish that he did something that's maybe more of an act than what actually happened here or what's actually alleged. But it's still not enough for deliberate indifference because there's no particularized danger. He — there is no immediate harm that he can foresee, and that's a requirement for the state-created danger doctrine because this is a medium security facility. And I would just — One of the policies is for him to announce whenever a man walks in through the door. It's a little different than that. It's — What is that policy? Someone of the opposite sex. Someone of the — I'm sorry, someone — so I guess that that's — there is a gender component in that, at least in the policy itself. Yeah. Kukendall wouldn't have been announced if that's what you're — I'm not sure if that's what you're asking, but — He would not have been announced? I don't think so because he's an inmate in the prison and he's the same gender, so — Oh, and of an opposite sex to whom? For — of the inmate population. For example, I've toured the prisons in Nevada. They'll announce woman on the floor. I see. Or something — female on the floor, something like that. I see. If Randall had allowed Kukendall to enter, would that be an affirmative act? I don't know because then he would have been there. And Kukendall was allowed to go to the activity center. It's not that he wasn't allowed. In fact, you look at the complaint, you see where — how the incident occurred. Gorslein let him in her office twice, you know? So he was allowed there. It's just that he had this propensity to violence that Randall wasn't aware of. I don't know if Gorslein was aware of it, perhaps not. But he was already allowed there, so — So you're saying that whatever that — that the case that the district court relied on does not cover this, and so his going to the bathroom as alleged, and with all inferences, would not have put him on notice, that going to the bathroom? That's right. There's — the requirement is that every reasonable corrections officer would know that his conduct violates the Constitution. And I do submit to this Court that his bathroom break in a medium-security facility where he returns within a few minutes does not — does not meet the standard of this Court. Okay. I realize we've asked you a lot of questions, so I'll give you two minutes on rebuttal. Thank you. I appreciate that, Your Honor. Good morning. Good morning, Your Honors. Let me grab my water real quick. Thank you. May it please the Court, Benjamin Rundall for Appellee Aja Gorslein. Your Honors, this case is about a correctional officer working in an understaffed prison who created a danger to Ms. Gorslein by choosing to abandon his post, Manning and Sallyport Doors, without first ensuring he had coverage. This affirmative action enhanced the danger to Ms. Gorslein, a caseworker with no weapons or radio, and resulted in her assault by a violent inmate who took advantage of the unlocked and unmanned doors to enter Ms. Gorslein's office. Ms. Rundall, can I ask you to start with counsel's argument that the allegations are insufficient to establish how the inmate Kukendall was able to get through the doors? Certainly, Your Honor. So in terms of looking at the complaint, and I have some of the complaint sites here, I just don't think that that's true. Reading every inference in favor of plaintiff, we can look at, for example, EOR 104, which is the complaint, at paragraph 64. Very clearly there, plaintiff alleges that but for defendants' actions, which includes Randall, inmate Kukendall would not have been able to enter Unit 2B. To get a little bit specific, more specific and granular, Your Honor, I think that really here, Officer Randall's position is critical. He's in the control room. He's the only person that has access to security doors. Without being in the control room and leaving the security doors open, which is another thing that's been alleged in the complaint, this allowed dangerous inmates in the prison, such as Kukendall, but it could have been another inmate, to test the doors. And in this 15- to 30-minute time, as Judge Callahan noted, that gave the opportunity for this inmate to attack Ms. Gorslin. I think that counsel strayed away slightly from this Court's questions when it came to an affirmative action, because this is an affirmative action. Where I think counsel wanted this Court to go was really to talk about foreseeability and whether or not this was a particularized kind of harm that this Court could consider. Well, he probably goes to the bathroom every day. It's not his fault that it's an understaffed prison. So I'm having a hard time. And if you went every day and nothing ever happened, how would you know that something was going to happen if you just went to the bathroom? Certainly. Or that he was deliberately indifferent to the horrible thing that happened to Ms. Gorslin, obviously. Judge Callahan, it's true that I think everybody goes to the bathroom every day. However, in this case, we're talking about Officer Randall, and if we look at the allegations, he didn't do anything to make sure that he was covered when he went to the bathroom. Sure, the prison's overstaffed, but it doesn't mean that there's no staff there. It doesn't mean that there was a decision that he had to make about, oh, I'm going to have to have an accident or leave or stay here or leave my post to go to the bathroom. I think it's very clear that, as alleged in the complaint, there are other things he could have done. When we're going to the deliberate indifference standard, though, Judge Callahan, I think that it's important to also look at some of the allegations in the complaint, and I want to talk about some of those. Well, I see negligence here easily, but you, Nevada would allow you to bring a negligence claim in state court, right? But you've put this into a 1983, so we've got to analyze it from that. So is negligence enough for a 1983? Your Honor, negligence is not enough for a Section 1983 claim, particularly in the context of a state-created danger. However, if I, yes, Your Honor? With respect to that, just that very point you just made, in the cases involving state-created danger, leaving somebody on the side of a road, requiring at night and so on, it's a direct act toward the victim. Now, is this similar, or would a negligence conduct lead to the same result as an affirmative act? And if negligence isn't covered, as Judge Callahan has pointed out, then how do you distinguish this? Yes, Your Honor. So within the complaint, we've alleged at ER 104 at 65 that defendant's actions left Gorsland completely alone in the unit to be without any protection or defense. And elsewhere in the complaint, it's alleged that he did know that she was there by herself. I wanted to get into some of those facts about deliberate indifference, which I think ties into your question. Did you allege that he was required to tell someone he was going to the bathroom? Did you allege that in the complaint? I don't believe that that's alleged directly, Your Honor. But in terms of — Well, I guess in words. Did you allege that? I don't believe that it's alleged exactly like that. But I think that the inference can be made that she was left by herself and that but for his actions, the inmate would have been able to access the unit. Well, isn't a failure to tell someone something an omission instead of an affirmative act? Your Honor, I think that at the lower court, acts versus omissions were discussed pretty frequently, which you'll see in the record. I would say that, for example, it's hard to say. And there was a conversation in the lower district court about what is an act, what is an omission. If I lied to this court today, would that be an omission or would that be an affirmative act? Here, I think that the most important thing and probably one of the most important facts is that Gorslin is controlling the Sally Port doors, and he left that control room and those Sally Port doors. Whether he called someone else, whether he didn't call someone else — Well, if he's controlling them, can someone get in if he's not there? Well, it seems to me if you're controlling them, like it's sort of like in my chambers, you buzz and then you're asked to identify who you are before you get to come in. Is that what controlling means of those? Yes, Your Honor. And in fact, if we go to the complaint — So I'm guessing, but if that's what controlling means, how did this guy get in if he's in the bathroom? Because you wouldn't be able to get in if the person controlling the door isn't there, right? Sorry, Your Honor. If we go to the complaint, which is EOR 103 at paragraph 61, I think there is an allegation there that helps clear this up. So Officer Randall, and you'll see other points in the complaint, he controls access and has to announce any ingress or egress into the unit. Without him being at the port or at the control station, inmates like Kukendall was allowed to open and close the Sally Port doors in Unit 2B to access the activity room and Gorsland's office on his own without having his movements observed and controlled. So I think the key distinction between what you're mentioning, Your Honor, in this case is that had Officer Randall been at his post, then Kukendall wouldn't have been able to access those doors in the first place. So Kukendall was able to take over where Randall left off and open and close Sally Port doors in order to gain entry? That's the allegation? That's the allegation in the complaint, Your Honor. What about Ms. Stern's point that Kukendall had previously been admitted and therefore there's no, it can be inferred he would have been admitted at this time, even if Mr. Randall had been there? Because he came in twice before and then he obviously, I mean, I can, he obviously saw his opportunity that maybe someone was... Well, he tested the doors, I think I understand the question, but if not, please stop me, I know you will. He tested the doors... You know me so well. He tested the doors three times and I think to answer the question directly, well, he wouldn't have been able to do that had Officer Randall been there. That's, I think, the key allegation in the complaint. Moving real quick to deliberate indifference because there's some facts there too that I think is really important to tie together this first section of affirmative action or state-created danger under deliberate indifference is, first, it's been alleged that Officer Randall knew the prison was dangerous and understaffed, EOR 107 and EOR 97. I don't think that's a surprise to anyone here that prisons are dangerous. But I think the understaffing is an important point. Officer Randall also knew that Ms. Gorslund was a social worker with no duty belt, weapons, or radios, EOR 89 and EOR 97. Ms. Gorslund has alleged that Officer Randall knew of the concerns about safety raised by a social worker such as herself at the prison and that employees like Randall made fun of those concerns. It says employees in the complaint, a reasonable inference can be made that that includes Randall, EOR 97. Last, it is alleged that Officer Randall knew that by abandoning his post, Ms. Gorslund would be left alone and without any protection. That's EOR 104. I think that the combination of the allegations made clear that it was known that social workers such as Ms. Gorslund brought concerns to the attention of other staff in the prison and that those concerns were, you know, not only rejected in some ways, but made fun of. In fact, one correctional officer left, I think it was a cardboard baton or a cardboard duty belt on a social worker's desk. Again, we're talking about a complaint stage. We're talking about reasonable inferences. The complaint itself says employees. Officer Randall is an employee. I'm still, though, the district court found that the claims against Chaconne failed because of his failure to follow, I don't know, NDOC or NDOC policies and procedures constituted an omission of something he was required to do. If Randall was required to inform someone he was going to the bathroom under NDOC policies and procedures, isn't that failure to do so also an omission? I don't think so, Your Honor. And let me explain why. I think if we look at this court's decisions in other cases, and the one that is coming to mind for me most prominently here is probably Martinez v. City of Clovis. There's policies and laws that direct officers, such as Officer Randall or police officers, to do all sorts of things. But the state-created danger test, when we're looking, even going back to Wood, isn't necessarily examining or analyzing whether or not they failed to follow a policy or a law, but specifically looking at their own acts that subjected or enhanced the danger to an individual. So I think the appropriate analysis here, Your Honor, is not did Officer Randall omit to do something in terms of policy, but whether he actively did something that enhanced the danger to Ms. Horsland. I think the answer to that question is pretty easily yes. Did you allege that he knew she was the only one there? Your Honor, if you look at EOR 104 at paragraph 65, the allegation is Defendant's actions left Horsland, quote, completely alone in Unit 2B without any protection or defense. But that doesn't allege that he knew she was alone, correct? There's allegations in the complaint, Your Honor, that I think make clear that she was alone, including that allegation, and that that is a reasonable inference. Well, okay. All right. Thank you. What about the argument that counsel's making about clearly established law? You know, we can't take these laws at a high level of generality. And so, for example, you have the district court was relying on L.W. Grubbs, which has some differences, right? You know, you have prison staff there assigning an inmate to a worker. What do you think are the best cases to show clearly established law here? I have written down here on my outline, Judge Sanchez, and I think that you called both of these cases to attention, which is Wood and Grubbs. And I think this Court can look to Polanco when it comes to the combination of cases creating clearly established law. I'm not sure if we have to do that, though. And I'd like to specifically point this Court to a line in Grubbs, which I think is dispositive in creating the clearly established law. And that law — and here's the line. This Court noted that the plaintiff is not seeking to hold defendants liable for the inmate's violent proclivities, but rather, quote, seeking to make defendants answer for their acts that independently created the opportunity for and facilitated the inmate's assault on here. So I think — Well, isn't it relevant, though, that the officers in Grubbs assigned the inmate to work with a woman employee? Randall didn't assign Kuykendall to be with Gorsling, right? No. But I sort of disagree with that analysis, Your Honor, and here's why. Because I don't think that it matters if there was a supervisor or a correctional officer that had exposed the plaintiff in Grubbs to harm. I think the Court makes clear here that the real issue is whether or not the defendant's opportunity for and facilitated an inmate's assault on here. Now, let's say we could say that Grubbs puts Randall on notice that he can't leave a woman alone with inmates. Let's say that it puts you on notice of that. Is there anything in the complaint that says he knows that Gorsling is alone with an inmate when he goes to the bathroom? Your Honor, I would go back to, again, our allegations at 104 paragraph 64 and EOR 104 at paragraph 65. So I would say that there is enough within the complaint that's been stated or by inference that she was alone. Well, but that he knows that she's alone with an inmate. In Grubbs, that Grubbs, someone you've got, you know that you're putting a person there. But what makes him on notice that Gorsling is alone with an inmate? Is that alleged anywhere? Just that he knows that Kukendall is on to be when he goes to the bathroom? Your Honor, if I may, a point of clarity, and I see that my time's out. May I proceed? You can keep talking. Okay. I think that that's contained in those paragraphs that I just mentioned. But we can also look at EOR 107 at paragraph 111, which says each of the defendants ignored the risk of harm to Aja. But I think there was a secondary question that you asked here, and that was the specific harm of Kukendall. And I want to be clear that the argument is not whether or not Kukendall was known specifically to Officer Randall. I don't think that's important. I think what's important is whether or not Officer Randall created or enhanced a dangerous situation by leaving the control room, manning the sally port doors, which allowed inmates such as Kukendall to access Ms. Gorsling. One more point, if I may. I also think that this Court asked a really good question. I think this was you, Judge Callahan, if this case would be different if it was a man. I think that this case would be different if Ms. Gorsling was a correctional officer. And I think that's another really important point here. Wasn't she a correctional officer before? She was, Your Honor. But in terms of her new position as a social worker, she had no radio, no weapons, no baton. She wasn't equipped and wasn't expected to be. Well, correctional officers don't have guns in prison, either. I've been in — I've been to visit people in prison, and you walk around and you think, like, oh, this isn't such a good place to be. I would agree with that, Judge Callahan. They make you sign a waiver to say we're not responsible for anything that happens to you and we don't negotiate for hostages. But I think that we need to examine what is the purpose of a social worker compared to the purpose of a correctional officer. And the purpose of a correctional officer is exactly and specifically to monitor inmates and control inmates. The purpose of a social worker like Ms. Gorsling is not to monitor and control inmates, and she doesn't even have the tools to do that. That's not her job. She's an administrative employee, which is also alleged in the complaint. Mr. Rundle, if you were — if we concluded that the — I believe to amend might be appropriate, could you add material allegations to the complaint? Certainly. I think that that's absolutely possible. And I would note, too, that I believe that this — Anything is possible. I think the question I have is do you think, in good faith and compliance with your obligations under the — under Rule 11 and others, you could make specific allegations on the — touching on the matters we've been discussing? My apologies, Your Honor. Yes, I think that we can do that. And I wanted to note briefly as well that I believe that the appeal was filed 13 days after Judge Trom's ruling. And within Judge Trom's ruling, Judge Trom also leaves open the possibility that other defendants, including the deputy warden, that the complaint could be amended to include them. Have you done that? We have not amended the complaint yet, Your Honor. Okay. Thank you. Thank you, Your Honor. I'll give the prison two minutes for rebuttal. Very briefly, I would like to address — So doesn't Grubbs put Randall on notice that he can't leave a woman with inmates? No. It puts supervisors on notice that they cannot place one of their employees that they have control over with an inmate that they know is dangerous. And as this Court can see, many of those elements in Grubbs that do give some notice to some people don't give notice to Randall because he's not a supervisor. He doesn't have any control not only of where Gorslein is assigned. He has — he's not in charge of her level of protection either. He doesn't have any control or responsibility for any of those things. I did want to address the amending the complaint issue because I think that one thing this Court should understand is that this complaint is already overly broad as we look at it when we look at just Randall. It includes every conceivable fact against every conceivable person in the prison who touched this issue at all. And so I think it's unlikely that they'll be able to amend. I would say — Wouldn't it be the opposite that because it cast a wide net before and many of the defendants have since been dismissed, that amendment could allow for some more focused allegations as to what was known, you know, about who was working in the union at the time when Mr. Randall — Well, I respectfully disagree, and I'll cite this Court to the paragraph that I referenced before, which is paragraph 106 of the complaint, where the fact that inmate Kukendall was not dangerous but was also guilty of sexually inappropriate conduct was well known to Defendant Doe. Now, if they'd wanted to allege that against Defendant Randall, they certainly could have. And I think that applies to the rest of the complaint as well. And I do think that that issue is important. The reason it's important is because it goes to whether Randall was deliberately indifferent. My colleague on the other side said he didn't think it was important, Randall's knowledge of the danger. Couldn't one establish deliberate indifference, not necessarily by specific knowledge of Kukendall, but of the inmate population in Housing 2B and the sort of risk that would be posed if people didn't gain entry? If I can finish my question, please. Oh, sorry, yeah. And the risk that would be posed if inmates gained entry through the Sally Port doors, knowing who resided in that housing unit? Yes, if there were an allegation that this were a maximum security facility, certainly, or that there were maximum security prisoners housed in the facility that had these dangerous proclivities, absolutely. If this were at Ely State Prison, we'd be having a very different conversation. Medium security prisoners are not capable of posing a danger to staff, in your view? Randall, no, no, absolutely not. Of course, the facts of this case would belay that. I've been to many prisons myself, and so I know there's different levels. But what we're looking at is Randall's subjective knowledge, Randall's subjective knowledge as it was alleged in the complaint. So let me make sure. There is no allegation of that knowledge. You're saying he's entitled to qualified immunity because Grubbs didn't put him on notice. Correct. Is there a secondary position that you have? Yes, I also believe there was no constitutional violation, but this court need not reach that issue. I think the easier find is that Grubbs simply didn't put him on notice. And your basis that there's no constitutional violation is there's no evidence of deliberate indifference? I think that's the strongest argument. There are other arguments in our briefs, as this court knows, but those are the two strongest. Thank you. Thank you. This matter will stand submitted.
judges: CALLAHAN, SANCHEZ, Kronstadt